## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ERIC STARKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **PENSKE TRUCK LEASING** | ) | **JURY TRIAL DEMANDED** |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Eric Starks, by and through the undersigned counsel of record, K. David Sawyer, of McPhillips Shinbaum, L.L.P., and hereby asserts his Complaint against the named Defendant Penske Truck Leasing Corporation, as set forth herein.

### I.     JURISDICTION & VENUE

1.     Plaintiff Eric Starks files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act; the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 et seq. (ADEA); and the Family and Medical Leave Act, (29 U.S.C. § 2601 et. seq.) (the "FMLA"), in order to obtain any and all compensatory and punitive damages, equitable relief, including reasonable attorneys' fees and costs, and other damages suffered by the Plaintiff, due to the named Defendant's wrongful and willful acts taken against Plaintiff.

2.     Venue is proper in the Northern Division of Middle District of Alabama, since the majority of the alleged willful and wrongful actions of the Defendant Penske occurred in Montgomery County, Alabama.

## II.     PARTIES

3.     The named Plaintiff, Eric Starks (hereinafter "Plaintiff" or "Mr. Starks") is a citizen of the United States and a resident of Montgomery County, Alabama. Plaintiff is over the age of nineteen years.

4.     The named Defendant, Penske Truck Leasing Corporation  (hereinafter "Defendant" or "Penske"), is a corporate entity operating in Montgomery County, Alabama, and has committed willful and wrongful acts against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, the ADEA, and the Family and Medical Leave Act, (29 U.S.C. § 2601 et. seq.) (the "FMLA").  As asserted in this Complaint, Mr. Starks was employed by Penske located in Montgomery County, Alabama.

2

### III.   STATEMENT OF FACTS

5.     Mr. Eric Starks is forty-seven (47) year old male of African American descent, and worked with Penske Truck Leasing Corporation ("Penske") for just shy of 8 years.  On September 8, 2023 Mr. Starks worked for Penske, and was classified as a Tech 1, at Branch 4622 located in Montgomery, Alabama.

6.     Mr. Starks started working for Penske as a Tech 3 in 2015, and maintained that position for approximately 3 years.

7.     In 2019, Penske promoted Mr. Starks to the position of Tech 2.  Mr. Starks maintained that position for another 3 years until 2022.

8.     In mid 2022, Penske promoted Mr. Starks to the position of Tech 1. At the time this promotion, Mr. Starks was the only African American serving as a Tech 1.

9.     Also, during his 8 years of employment with Penske, Mr. Starks was the only African American promoted to the position of Tech 1.

10.    In September 2021, while serving as a Tech 2, Dustin Ohlrogge (another Tech 2) was transferred from night shift to work the same schedule as Mr. Starks.

11.     Shortly thereafter, when Dustin Ohlrogge apparently learned how Mr. Starks had been promoted and how much Mr. Starks was earning as a Tech 2, Dustin Ohlrogge's attitude and actions towards Mr. Starks changed dramatically.

12.     Dustin Ohlrogge often slammed lockers while in close proximity to Mr. Starks, and repeatedly made grunting noises towards Mr. Starks.

13.     Dustin Ohlrogge also instructed Mr. Starks's co-workers during a "shift huddle" that if they had any problems with Mr. Starks, to report this to the three (3) Caucasian Techs:  Adam Bunch (Blake), Dustin Ohlrogge or Jeff Pack.

14.     Dustin Ohlrogge excluded Mr. Starks from any "shift huddle" meetings.

15.     Mr. Starks promptly reported Dustin Ohlrogge's harassment and discrimination to Nathaniel Nale (the day shift supervisor).

16.     Although Mr. Nale informed Mr. Starks "he would take care of it," nothing ever changed, and Dustin Ohlrogge continued to treat Mr. Starks with the same forms of harassment and discrimination.

17.     Mr. Starks soon learned that Dustin Ohlrogge and Nathaniel Nale were best friends hired by Penske during the same period of time.

18.     Towards the end of 2021, Penske sent Dustin Ohlrogge and Mr. Starks home without pay for a "cooling off period" for what occurred involving Dustin Ohlrogge during a "shift huddle."  This was the first and only time Mr. Starks had been reprimanded while at Penske.

19.     However, in April 2022, Mr. Starks was required to file a second complaint with his supervisor, Nathaniel Nale, asserting how Dustin Ohlrogge was repeatedly placing scrap metal parts into Mr. Starks's tool box.

20.     Shortly after making this report to Nathaniel Nale, when Mr. Starks returned from road call, Dustin Ohlrogge again had placed even more scrap metal into Mr. Starks's tool box.

21.     At that time, Mr. Starks prepared and provided a written statement for Mr. Nathaniel Nale regarding Dustin Ohlrogge and his continued harassment.

22.     In response, Mr. Starks received a phone call from a Caucasian female named "Christina" at Penske HR.

23.     During this phone call with Penske HR, Mr. Starks also informed Cristina how Dustin Ohlrogge was continuing to place scrap metal in his tool box.

24.     Also, during this phone call with Penske HR, Mr. Starks informed Christina of the continued harassment he had been subjected to for the past seven (7) months. Christina and/or others at Penske HR informed Mr. Starks "they had taken care of it" and that the harassment would not continue.

25.     However, this was not true, as Dustin Ohlrogge continued to harass Mr. Starks.

26.     In addition, beginning in late 2022, the Branch Service Manager, Ryan Barnett, began calling "coordination meetings" each morning at 8:30 a.m. with only Caucasian techs.

27.     These "coordination meetings" included the Caucasian male parts manager and the Caucasian female maintenance coordinator, but specifically excluded Mr. Starks.

28.     Each morning Ryan Barnett would send out an email to those who were to attend the "coordination meeting" that included the deadlines for the day.

29.     Although Ryan Barnett included all the Caucasian techs in these emails and "coordination meetings," Mr. Starks never received an email or other notice concerning these meetings, and was never included nor asked to attend the daily "coordination meetings."

30.     In addition, during these daily "coordination meetings," Nathaniel Nale assigned Mr. Starks to work in Quick Service or instructed Mr. Starks to handle repairs that had not been finished the night before.

31.     In December 2022, after visiting his primary care doctor, Mr. Starks requested FMLA leave due to his continued stress and medical condition caused by the ongoing harassment, discriminatory practices and mistreatment at work.

32.     Penske allowed Mr. Starks to take FMLA and/or short-term disability leave from December 16, 2022 through April 3, 2023.

33.     However, in April 2023, upon Mr. Starks's return to work, Dustin Ohlrogge immediately began harassing Mr. Starks once again.

34.     In response, Mr. Starks again made numerous reports of Dustin Ohlrogge's harassment to Ryan Barnett, Nathaniel Nale, and the District Manager, Heather Holland.

35.     Despite these many reports made to Ryan Barnett, Nathaniel Nale, and Heather Holland, nothing changed, and Dustin Ohlrogge's harassment continued.

36.     In addition, Dustin Ohlrogge had essentially "monopolized" the diagnostic cart with the computer and two monitors that was to be used by Mr. Starks.  This cart allowed technicians to perform certain jobs and also permitted technicians to advance themselves at Penske.

37.     For some unexplained reason, Dustin Ohlrogge was allowed to hold the key to the diagnostic cart.

38.     When Mr. Starks asked Nathaniel Nale why he was not being allowed to use the diagnostic cart and was not assigned to any jobs that would have advanced his training, Mr. Nale refused to answer.

39.     Mr. Starks also knew he was supposed to receive OEM training at least one hour each day on the training computer,  but he was never provided this training.

40.     When Mr. Starks asked Nathaniel Nale why he was not being provided this training, Mr. Nale refused to answer.

41.    At this same time, Dustin Ohlrogge, the Caucasian tech,  was allowed to use the OEM computer at his leisure, and Penske also paid Dustin Ohlrogge during this training.

42.    When Mr. Starks questioned Biana McCollum, at Penske HR, about being excluded from the diagnostic cart, Ms. McCollum responded, "I don't have an answer."

43.    At that time, Mr. Starks also informed Biana McCollum how the supervisors at Branch 4622 located in Montgomery, Alabama, allowed "white privilege."

44.    On August 24, 2023, during a day shift, Dustin Ohlrogge threw a piece of metal exhaust pipe at Mr. Starks.

45.    At the time, Nathaniel Nale was in the shop and witnessed this incident. Thereafter, Dustin Ohlrogge entered the breakroom while Mr. Starks was on break and punched the breakroom door.

46.    Several hours later, while Mr. Starks was in the bathroom, Dustin Ohlrogge approached Mr. Starks and slammed his locker in another effort to intimidate Mr. Starks.

47.    After each of these additional incidents involving Dustin Ohlrogge, Mr. Starks spoke to George Politakis, the Penske District Service Manager.

48.    Mr. Politakis responded that he didn't have time to talk but gave Mr. Starks his card and cell phone number.

49.    Accordingly, Mr. Starks went to directly to Ryan Barnett and informed him what had recently happened, and reiterated Dustin Ohlrogge's constant harassment, and how it was detrimentally affecting him, both mentally and physically.

50.    Mr. Starks also informed Ryan Barnett that he had attempted to ignore Dustin Ohlrogge's continued harassment, do his job, and follow Penske rules.

51.    The following day, on August 25, 2023, Ryan Barnett, Bianca McCollum and Samantha Young called Mr. Starks into the conference room, where Bianca McCollum asked Mr. Starks what had happened on August 24, 2023.

52.    Mr. Starks reiterated what he had told Ryan Barnett, and that had not stated anything offensive directly to Dustin Ohlrogge.

53.    Mr. Starks also reiterated what he had reported earlier in 2023, the continued harassment Dustin Ohlrogge, and how his complaints concerning Dustin Ohlrogge never had been addressed by anyone during the past two years.

54.    Mr. Starks also had asked Bianca McCollum in separate meetings with her why he was treated differently than all of the Caucasian Tech I's employed with Penske; and why his training and advancement possibilities were so limited.

55.     Although Bianca McCollum had responded that this was not an HR issue for Penske, on August 25, 2023, Bianca McCollum placed Mr. Starks on administrative leave with pay until her investigation was over.

56.     For the next two weeks, Mr. Starks remained out of work, and never received any calls nor heard from anyone at Penske regarding this "investigation."

57.     On September 8, 2023, Mr. Starks received a telephone call from Bianca McCollum at which time Ms. McCollum informed Mr. Starks that his employment at Penske had been terminated.

58.     As a direct and proximate result, Mr. Starks has suffered the loss of valuable income and benefits, including medical & dental insurance, short term & long term disability insurance, and life insurance.

59.     Mr. Starks has further lost the four (4) percent pension contribution from Penske that has been entitled to each quarter for the last 8 years. Mr. Penske has also suffered severe mental anguish and emotional distress.

60.     On October 5, 2023, Mr. Starks filed a charge of discrimination with the EEOC alleging Penske's ongoing discrimination and retaliation due to his race and his age. (Exhibit 1, attached).

61.     On August 7, 2024, the EEOC issued Mr. Starks a "Right to Sue" as to his charge of discrimination and retaliation filed with the EEOC. (Exhibit 2, attached).

62.     As a direct and proximate result of the Defendant's unlawful actions as alleged, Mr. Starks has suffered significant compensatory damages, mental anguish and emotional distress, including, but not limited to, lost back pay and benefits.

## IV.   CLAIMS

### COUNT ONE

### RACE DISCRIMINATION

63.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 62, above.

64.     Plaintiff avers that the Defendant's actions and inactions toward him violated his right to be free of race discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), the 1991 Civil Rights Act.

65.     Title VII of the Civil Rights Act of 1964 specifically prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

66.     Plaintiff Starks is an African American male who served as an employee of the Defendant with a number of other employees and managers, each of whom were white.

67.     The white employees and managers, as stated above, violated Title VII of the Civil Rights Act by discriminating against the Plaintiff, with respect to his compensation, terms, conditions, and privileges of employment, due to his race.

68.     As a direct and proximate cause of Defendant's afore-described actions in discriminating against Plaintiff Starks due to his race, Plaintiff was injured and damaged financially, and has suffered considerable mental and emotional anguish.

69.     Plaintiff avers that he has pursued and exhausted his administrative remedies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant the following relief:

a)      A judgment declaring that the Defendant discriminated against the Plaintiff due to his race, and violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

b)      Judgment for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses:

c)      Judgment for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; punitive damages; and

an order enjoining Defendant from engaging in any such unlawful employment practice under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

d)     An order for reasonable attorney's fees (including expert fees) and costs, including those incurred for seeking administrative relief; and

e)     Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT TWO

## RACE-BASED COLD AND HOSTILE WORKING ENVIRONMENT

70.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 – 69, above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward him violated Plaintiff's right to be free of a race-based cold and hostile working environment in employment, a violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), as amended by the 1991 Civil Rights Act.

71.     The Defendant created, maintained and allowed a hostile work environment for Plaintiff Starks due to his race that was permeated with discriminatory intimidation, ridicule, and insult, and that was sufficiently severe or pervasive to alter the conditions of Plaintiff Starks's employment creating an abusive working environment.

72.     Plaintiff Starks, an African American, belongs to a protected group and suffered unwelcome and hostile harassment.   This harassment, based on Mr. Starks's race, was sufficiently severe or pervasive to alter the terms and conditions of his employment, and created a discriminatorily abusive working environment. The Defendant, Mr. Starks's employer, is responsible for this hostile work environment under both direct and vicarious liability.

73.     As a proximate cause of each of the Defendant's afore-described actions in creating, maintaining, and allowing a hostile work environment against Plaintiff Starks due to his race, Plaintiff was injured and damaged financially, and has suffered considerable mental and emotional anguish.

74.     Plaintiff avers that he has pursued and exhausted his administrative remedies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant the following relief:

a)     A judgment declaring that the Defendant created a race-based cold and hostile work environment against the Plaintiff, and violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

b)      Judgment for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses:

c)      Judgment for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; punitive damages; and an order enjoining Defendant from engaging in any such unlawful employment practice under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

d)      An order for reasonable attorney's fees (including expert fees) and costs, including those incurred for seeking administrative relief; and

e)      Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT THREE

## WRONGFUL RETALIATION IN VIOLATION OF TITLE VII

75.      Plaintiff Starks hereby repeats, realleges, and incorporates by reference the preceding paragraphs of this complaint and described in paragraphs 1-74, above.

76.   Plaintiff Starks asserts that he engaged in statutorily protected activity by making complaints of the Defendant's racial discrimination and racial hostile

work environment to his superiors, and to the Defendant's Human Resources Department.  After making such statutorily protected complaints, Plaintiff Starks suffered one or more adverse action(s) as stated above, including his termination from employment.  Each adverse action was causally related to his protected activity.

77.    In his Complaint to the EEOC on October 10, 2023, Plaintiff Starks asserted he had been discriminated and retaliated against due to his race.

78.    After Mr. Starks engaged in statutorily protected activity by making complaints to his superiors, and to the Defendant's Human Resources Department, Mr. Starks repeatedly suffered retaliation and adverse employment actions that were directly and causally related to his activity protected by Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act.

79.    The Defendant was well aware of Mr. Stark's protected conduct at the time of the Defendant's retaliatory adverse employment actions taken against Mr. Starks.  The Defendant's retaliation continued against Plaintiff Starks until his termination on September 8, 2023.

80.    The Defendant's retaliation greatly damaged Mr. Starks and was intended to detrimentally affect Mr. Starks and prohibit his ability to maintain both his job and sanity at the same time.

81.    As a direct and proximate cause of Defendant's afore-described retaliation taken against Plaintiff Starks, Plaintiff was injured and damaged financially and has suffered considerable mental and emotional anguish.

82.    Plaintiff avers that he has pursued and exhausted his administrative remedies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant the following relief:

a)    A judgment declaring that the Defendant wrongfully retaliated against the Plaintiff, and violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

b)    Judgment for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses:

c)    Judgment for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; punitive damages; and an order enjoining Defendant from engaging in any such unlawful employment practice under Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act;

d)     An order for reasonable attorney's fees (including expert fees) and costs, including those incurred for seeking administrative relief; and

e)     Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT FOUR

## AGE DISCRIMINATION

83.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 82, above.

84.     At all times relevant to this Complaint, Plaintiff was over age 40, and protected by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA).

85.     Plaintiff avers that the Defendant's actions and inactions toward him violated his right to be free of age discrimination in employment, in violation of the ADEA.

86.     The ADEA specifically prohibits employers from discriminating against employees due to age.

87.     The Defendant's employees and managers, as stated above, violated the ADEA by discriminating against the Plaintiff, with respect to his compensation, terms, conditions, and privileges of employment, due to his age.

88.    As a direct and proximate cause of Defendant's afore-described actions in discriminating against Plaintiff Starks due to his age, Plaintiff was injured and damaged financially, and has suffered considerable mental and emotional anguish.

89.    Plaintiff avers that he has pursued and exhausted his administrative remedies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Court grant the following relief:

a)    A judgment declaring that the Defendant discriminated against the Plaintiff due to his race, and violated Plaintiff's rights under the ADEA;

b)    Judgment for compensatory damages for emotional pain, suffering, mental anguish, loss of enjoyment of life, dignitary injury, and other non-pecuniary losses;

c)    Judgment for back pay, including the economic value of lost employment benefits and interest on back pay; an order for front pay, including interest on front pay, or for reinstatement in lieu of front pay; punitive damages; and an order enjoining Defendant from engaging in any such unlawful employment practice under the ADEA;

d)    An order for reasonable attorney's fees (including expert fees) and costs, including those incurred for seeking administrative relief; and

e)      Such further, other and different relief as the Court may deem appropriate and necessary.

### COUNT FIVE

### RETALIATION IN VIOLATION OF
### THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. § 2601, et seq.

90.     Plaintiff realleges and incorporates herein, by reference, each and every allegation contained in paragraphs 1 through 89, inclusive.

91.     Plaintiff Starks is informed and believes, and on that basis alleges, that Penske qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Plaintiff is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

92.     Plaintiff is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1), and that Penske wrongfully and/or willfully retaliated against him for requesting, or attempting to request, the leave afforded him by the FMLA, in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

93.     Plaintiff is informed and believes, and on that basis alleges, that after requesting or attempting to request leave provided by the FMLA, Penske wrongfully and/or willfully retaliated against him (a) by failing to provide Plaintiff with adequate notice, information and leave required by FMLA;  (b) by refusing to allow

Plaintiff to request leave provided by the FMLA; (c) by refusing to return Plaintiff to his position of employment as required; (d) by refusing to return Plaintiff to an equivalent position with substantially similar duties, conditions, responsibilities, privileges and status as Plaintiff's position; (e) by wrongfully removing Plaintiff's many duties and responsibilities; (f) by wrongfully threatening Plaintiff with his termination and loss of accrued benefits; and (g) by terminating Plaintiff in retaliation for requesting or attempting to request leave provided by the FMLA.

94.     Plaintiff Starks is informed and believes the unlawful acts of Penske in retaliating against him in violation of the FMLA were wrongful, willful, voluntary, deliberate, intentional, and/or negligent.

95.     Penske either knew or showed reckless disregard for the matter of whether its unlawful conduct was prohibited by the FMLA.

96.     Plaintiff is informed and believes, and on that basis alleges, that Penske wrongfully and/or willfully retaliated against him in violation of 29 U.S.C. § 2615(a)(2), and section 825.220 of the FMLA regulations, and is responsible for its violations under the FMLA, 29 U.S.C. § 2617.

97.     As the direct and proximate result of the FMLA retaliation taken by Penske, including the termination of Plaintiff, Mr. Starks has incurred, and is now incurring, a loss of wages and benefits, all within the meaning of the FMLA, 29 U.S.C. § 2601, et seq., and § 2617(a), in an amount to be proved at trial.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that this Court grant the following relief:

a)      Judgment for these costs including, without limitation, lost wages and benefits;

b)      back pay from the effective date of termination;

c)      lost benefits and medical expenses from the date of termination, including any lost employment benefits from the date of termination;

d)      the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617;

e)      compensatory damages, including for mental anguish,

f)      court costs and reasonable attorneys' fees; and

g)      equitable and such further, other and different relief as the Court may deem appropriate and necessary.

## V.   JURY TRIAL DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this 28th day of October 2024.

Eric Starks, Plaintiff
By:

/s/ K. David Sawyer
K. David Sawyer (ASB-5793-R61K)
Counsel for Plaintiff

**OF COUNSEL:**

McPhillips Shinbaum, LLP
516 S. Perry Street
Montgomery, AL  36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
kdsawyer64@outlook.com
Counsel for Plaintiff

**PLAINTIFF WILL SERVE THE DEFENDANT PENSKE TRUCK LEASING**

**CORPORATION BY PERSONAL PROCESS SERVER AT:**

> **CORPORATION SERVICE COMPANY INC**
> **Attn: PENSKE TRUCK LEASING CORPORATION**
> **641 SOUTH LAWRENCE STREET**
> **MONTGOMERY, AL 36104**

**EXHIBIT 1**

# McPhillips Shinbaum, L.L.P.

Luck & Sawyer
ATTORNEYS AND COUNSELORS AT LAW

Aaron J. Luck
K. David Sawyer

516 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

(334) 262-1911
(866) 224-8664
FAX (334) 263-2321

Kenneth Shinbaum, Of Counsel
Joseph C. Guillot, Of Counsel
Julian L. McPhillips, Jr., Retired

Office Admin. Amy Strickland

October 5, 2023

**VIA EMAIL (birmintake@eeoc.gov)**
Intake Officer
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205

      **RE:    Eric Starks vs. Penske Truck Leasing**

Dear Sir or Madam:

      This firm and I represent the above-named client.  Enclosed please find a charge of discrimination, filed on behalf of our above-named client.  Please reply with the charge number and add my name as the charging party's representative on the EEOC's Public Portal so that the charge and all other related documents will appear under "My Cases" on the portal. My email address is kdsawyer64@outlook.com.  Further, please add my paralegal Amy Strickland to Mr. Stark's representation so that that his charge and all related documents will appear under Ms. Strickland's "My Cases" on the portal. Her email address is astrickand@msg-lawfirm.com.  Our client's email address for his portal access is estarks76@yahoo.com.

      Thank you.

               Sincerely,

               K. David Sawyer

Enclosures

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Eric Starks | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Mr. Eric Starks | HOME TELEPHONE *(Include Area Code)*<br>334-220-0825 | |
|---|---|---|
| STREET ADDRESS<br>1648 Meadow Oak Court | CITY, STATE AND ZIP CODE<br>Montgomery, Al. 36117 | DATE OF BIRTH<br>03/1/1976 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>Penske Truck Leasing | NUMBER OF EMPLOYEES, MEMBERS<br>50+ | TELEPHONE *(Include Area Code)*<br>334-270-3390 |
|---|---|---|
| STREET ADDRESS<br>1700 Ridgeway West, | CITY, STATE AND ZIP CODE<br>Montgomery, Al. 36101 | COUNTY<br>Montgomery |
| NAME | TELEPHONE NUMBER *(Include Area Code)* | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☑ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☑ RETALIATION  ☑ AGE  ☐ DISABILITY  ☐ OTHER (Specify) | September 8, 2023<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

The particulars of my charge of discrimination are set forth in the attached EEOC affidavit, the same as if more fully set forth herein.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT<br>Λ Eric Starks |
| Date 9/27/23  x *Eric Starks*<br>Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

EEOC FORM 5 (REV. 3/01)

## AFFIDAVIT

**STATE OF ALABAMA**                          )

**COUNTY OF MONTGOMERY**                 )

My name is Eric Starks and I do solemnly swear the following is true and correct in every particular:

1. I am a forty-seven (47) year old male of African American descent and am of sound mind and body.

2. I worked with Penske Truck Leasing ("Penske") for just shy of 8 years.  On September 8, 2023 I was wrongfully terminated. At the time of my termination, I was classified as a Tech 1, at Branch 4622 in Montgomery, Alabama.

3. I started with Penske as a Tech 3 and maintained that position for approximately 3 years. I was then promoted to Tech 2, and maintained that position for another 3 years. In mid 2022, I was promoted to Tech 1. At the time of my promotion, I was the only black Tech 1. During my 8 years at Penske, I was the only African American black promoted to Tech 1. While I worked as a Tech 2, Dustin Ohlrogge (another Tech 2) was transferred in from night shift to work on my same schedule. Roughly around September of 2021.

4. Shortly after Dustin Ohlrogge learned how much I was receiving in pay from Penske, his attitude changed dramatically towards me. Dustin would slam lockers while I was around and make grunting noises around me. Dustin would also tell my co-workers during the "shift huddle" that if they had problems, to come see the other 3 three white Tech 1's, Adam Bunch (Blake), Dustin Ohlrogge or Jeff Pack. I was always excluded by Dustin.

5. I did speak with Nathaniel Nale (day shift supervisor) about the harassment in 2021 by Mr. Ohlrogge. I was informed by Mr. Nale that he would take care of it. However, nothing ever changed and Dustin continued to subject me to the same or similar harassment.  Mr. Nale and Dustin were best friends and had been hired by Penske within the same period of time.

6. Towards the end of 2021, Dustin and I were sent home without pay for a "cooling off period" that arose for an incident during a shift huddle.  During my 8 years of employment with Penske, this was the only time I was reprimanded. For a very short period of time during the early months of 2022, Dustin's attitude and harassment of me decreased.

7. However, by April 2022, I had filed a second complaint with my supervisor Nathaniel Nale against Dustin Ohlrogge because Dustin had continued to put scrap metal parts onto my tool box. I questioned Dustin as to why he did it, but

1

he never responded. When I had returned from a second road call, Dustin had put more scrap metal into my tool box. I then prepared a written statement for Mr. Nale and later received a call from a white female named Christina at Penske HR. I told Cristina about Dustin continuing to put scrap metal in my tool box, and also made Penske HR aware of all the other harassment I had been subjected to for the past seven months. I was eventually informed by Penske HR that "they had taken care of it." However, Dustin harassment did not stop and he continued his harass me.

8. In late 2022, Branch service manager Ryan Barnett started calling coordination meetings each morning at 8:30 a.m. with all the white Tech 1s, the white male parts manager and the white female maintenance coordinator. Each morning Mr. Barnett would send out an email to all the parties who were to attend the meeting that contained the deadlines for the day. While all the other Tech 1s were always included in the email, I was never included. Further, during these meeting times, I was assigned to Quick Service or to handle repairs not finished the night before with driver's waiting for their vehicles. I was excluded from these meetings with the white employees.

9. In December 2022, after visiting my primary care doctor, I requested FMLA leave for my stress and medical condition that occurred due to the harassment on the job, discriminatory practices and mistreatment at work. I was granted FMLA / Short term disability from December 16, 2022 through April 3, 2023.

10. Upon my return from FMLA leave, I again was continually harassed by Dustin, I made many reports of this harassment to Ryan Barnett and Nathaniel Nale. However, nothing changed and the harassment continued. Further, Dustin monopolized the diagnostic cart with the computer and two monitors that was supposed to be used by the both of us. That cart helps the technicians perform certain jobs and eventually be able to advance themselves. Dustin held the key to the diagnostic cart. When I asked Mr. Nale why I was not being allowed to use the diagnostic cart nor assigned to any jobs that would have advanced my training, Mr. Nale never gave me an answer. I was supposed to receive at least one hour each day of OEM training on the training computer, but I was never provided this training. However, Dustin was allowed to use the OEM computer at his leisure and also get paid for training. When I questioned Biana McCollum of HR about being excluded from the diagnostic cart, she stated, "I don't have an answer." I responded by telling Biana McCollum how this shop is known for allowing white privilege.

11. On August 24, 2023, during a day shift, Dustin threw a piece of mental exhaust pipe towards me after he became frustrated over not being able to complete a repair. At the time, Nathaniel was in the shop and witnessed this incident. Thereafter, Dustin entered the breakroom while I was on break and either punched or hit the breakroom door, obviously still frustrated about the earlier

incident.  Several hours later, while I was in the bathroom, Dustin approached and slammed his locker in another effort to intimidate me.

12. After the shop, breakroom and bathroom incident, I attempted to speak to George Politakis, the District Service Manager. But Mr. Politakis informed me that he didn't have time to talk at that time, and gave me his card and cell phone number. Therefore, I went to Ryan Barnett and told him what had happened. I also told Ryan Barnett how Dustin's constant harassment was affecting me.  I also told Ryan Barnett that I had attempted to ignore Dustin, do my job, and follow Penske rules.

13. The following day, on August 25, 2023, I was called into the conference room by Ryan Barnett, Bianca McCollum and Samantha Young. Bianca asked me what had happened on August 24, 2023, and what I had said. I told her what I said to Ryan, and that I never used Dustin's name, and had not stated anything to Dustin directly. Earlier in 2023, I had also asked Bianca about the continued harassment I had complained about and that never had been addressed during the last two years; why I had been treated differently than all of the white Tech 1s employed with Penske; and why my training and advancement possibilities were so limited.  Bianca responded that it was not an HR issue for Penske, and that I was being put on administrative leave with pay until the investigation was over.

14. For the next two weeks I remained out of work, and never received any calls or heard from anyone at Penske regarding this "investigation.". On September 8, 2023 I received a call from Bianca McCollum informing me that I had been terminated. Attached is the letter I received by email shortly thereafter from Penske. (See Attached).

15. Based on the forgoing, I believe I was wrongfully terminated based on my race and age, as well as retaliation for the complaints that I had filed with my supervisors and HR over the last 2 ½ years. I further believe that management was looking for any reason to terminate me as the only black Tech 1 on day shift.

16. As a result of the discrimination practiced against me, I have lost valuable income and benefits, including medical & dental insurance, short term & long term disability policy, and life insurance. I have also lost the 4 percent pension contribution from Penske that I have been entitled to each quarter for the last 8 years. Roughly I have received $20,000 is pension contributions through Penske Truck Leasing. I have also suffered severe mental anguish and emotional distress and have incurred the cost of an attorney to pursue this matter.

17. Any further communication regarding the subject matter of this charge of discrimination should be directed to my attorney, K. David Sawyer, at

3

McPhillips Shinbaum, L.L.P., 516 S. Perry Street, Montgomery, AL 36104. Mr. Sawyer's telephone number is (334) 262-1911 and email address is kdsawyer64@outlook.com.

_Eric Starks_

Eric Starks

BEFORE ME, the undersigned Notary Public, appeared, Eric Starks, who is known to me, and who states that the foregoing is true and correct in every particular, on this the 5ᵗʰ day of October, 2023.

NOTARY PUBLIC

My commission expires: 9/10/25

[SEAL] AMELIA ANNE STRICKLAND / MY COMMISSION EXPIRES SEPTEMBER 10, 2025 / NOTARY PUBLIC / STATE OF ALABAMA

4


✕          Termination Ltr_EStarks...          ⬆



**To:**   Eric Starks

**From:** Bianca McCollum, District Human Resources Manager

**CC:**   Ryan Barnett, Branch Service Manager
          Samantha Young, Area Human Resources Manager

**Date:** 09/08/2023

**Re:**   Termination of Employment

---

You were placed on paid Administrative Leave 08/25/23 pending investigation.  The investigation concluded and the following was determined:

> On 8/24/2023, several witnesses overheard you make a verbal threat against another associate by stating "while I'm at work I'm going to just be quiet, ignore him, do my job, and follow Penske rules. But, if I catch him off the premises I'm going to handle it myself. This is Montgomery, the city where you fuck around and find out." During the investigation interview with you, you admitted that you made that statement and that it was a threat of harm directed at a specific associate.

Your behavior as described above will not be tolerated and is a direct violation of company policies and procedures including the Associate Behavior and Work Rules and Workplace Violence policies. As a result, your employment is terminated effective immediately.

If you have any questions on the above, please contact Bianca McCollum at 659-228-2179 or Bianca.McCollum@penske.com

Regards,

Bianca McCollum, PHR
District Human Resources Manager - Birmingham
Penske
276 Oxmoor Cir



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)          **EXHIBIT 2**

Issued On: August 7, 2024

**To:** Eric Starks
1648 Meadow Oak Court
Montgomery, AL 36117

Charge No: 420-2024-00204

EEOC Representative and email:          JARED LING
Federal Investigator
jared.ling@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 420-2024-00204.

On behalf of the Commission,

**SHERI GUENSTER** Digitally signed by SHERI GUENSTER
Date: 2024.08.07 16:19:08 -05'00'

/for Bradley A. Anderson
District Director

**Cc:**
Maria Cusick
2675 Morgantown Road
Reading, PA 19607

Amelia Strickland
McPhillips Shinbaum, LLP
516 South Perry Street
Montgomery, AL 36104

K. David Sawyer
516 South Perry Street
Montgomery, AL 36104


Please retain this notice for your records.